# Blair *v.* Murphree, Adm'r.

*Detinue by Administrator for Growing Crops of Decedent.*

1. *Growing crops at decedent's death ; rights and duties of administrator as to.*—An executor or administrator " may complete and gather a crop commenced by the decedent," and it then becomes assets in his hands (Code, § § 2439-40) ; and it would be his duty to complete and gather the crop, " whenever, from the reasonable appearance of things, the interests of the estate are likely to be promoted thereby," but the statute does not make it his imperative duty, in all cases, to complete and gather the crop, and it is not assets of the estate if he does not. (Limiting and explaining *Tayloe v. Bush*, 75 Ala. 432 ; and *Meacham v. Moore*, 73 Ala. 542.)

2. *Same ; rights of widow.*—When the widow continues in possession of the dwelling-house and plantation connected therewith, dower not having been assigned to her (Code, § 2238), she may complete and gather the growing crop, on failure of the personal representative to exercise his statutory right ; and having completed and gathered it, the latter can not recover it from her.

APPEAL from the Circuit Court of Pike.

Tried before the JOHN P. HUBBARD.

This was an action of detinue by the appellee, Joel D. Murphree, as administrator of the estate of John Blair, deceased, against the appellant, Malinda Blair, the widow of said decedent, for the recovery of certain cotton, part of a crop planted and in process of cultivation by the decedent at the time of his death.

The plea was the general issue, " *non detinet.*" The plantation upon which the cotton sued for was grown, was the residence of the decedent at the time of his death, which occurred in July, 1884, and the defendant was residing thereon at that time and continued with her minor children to occupy it as a homestead after the death of her husband, and took possession and finished the cultivation and gathering of the said crop thereon by her own labor and

[Blair v. Murphree, Adm'r.]

at her own expense. No dower had been assigned her, nor had the homestead exemption been set apart. The plaintiff was appointed administrator in October, 1884, but took no part in the making or gathering said crop, and did not pay nor offer to pay any part of the expense thereof.

There was a gin on the place, and during the fall and winter of 1884, the defendant used said gin in ginning for the public and received cotton as toll, and there was testimony tending to show, that this toll cotton was mixed with the other cotton raised on the place that year, and that the cotton sued for was part of the cotton so mixed. The defendant testified, that the cotton sued for was toll cotton, and if said cotton was mixed, it was done without her knowledge or consent. There was testimony conflicting with this testimony of defendant, and, also, testimony tending to show that the cotton was mixed by agents of defendant, who were running and managing the gin for her.

The court, in the general charge to the jury, among other things, instructed them, "that notwithstanding under the law the widow of a decedent had quarantine and homestead exemption rights, yet, if a man died leaving an unfinished crop, although the widow may finish making and gathering it at her own expense, the crop would be the assets of the estate and subject to administration, and if they should believe from the evidence that John Blair died in July, 1884, occupying the land as a homestead, and after his death defendant, his widow, remained on the said land with her minor children and at her own expense finished the crop and gathered the same, and that while said crop was being gathered in October, 1884, the plaintiff was appointed administrator of the estate, then the plaintiff would be entitled to the crop grown that year on the land, notwithstanding he took no part in finishing or gathering the crops, and neither paid nor offered to pay any part of the expenses of finishing and gathering said crop." The defendant excepted to this charge.

The court further instructed the jury, " that the plaintiff would not be entitled to recover the toll cotton of the defendant, yet if she mixed it with the estate cotton, or if it was mixed by her agents, then she acted at her peril, and the plaintiff would be entitled to recover the whole of the cotton." The defendant reserved an exception to this charge.

M. N. CARLISLE, and P. O. HARPER, for appellant.—It is only when the administrator exercises the authority given him by the statute (Code of 1876, §§ 2439, 2440), that the

[Blair v. Murphree, Adm'r.]

crop becomes assets of the estate. The widow's right of quarantine entitles her to the rents and profits of the plantation—they are given her in lieu of dower.—Code of 1876, § 2238; *Barber v. Williams,* 74 Ala. 331; *Shelton v. Carroll,* 16 *ib.* 148; *Cook v. Webb,* 18 *ib.* 810.

GARDNER & WILEY, *contra.*

STONE, C. J.—In *Tayloe v. Bush,* 75 Ala. 432, speaking of sections 2439, 2440 of the Code of 1876, this court said: "Crops having been planted, and in the course of cultivation at the death of the intestate, it was the duty of Bush, as administrator in chief, prescribed and imposed by the statute, to continue the cultivation, to gather and prepare them for market, and to make sale of them." In that case the administrator had taken control of the crop, had completed, gathered and marketed it; and the proceeds, falling below the expenses he had incurred, it was objected, on his settlement, that he should not be allowed credit for the excess of expenses above the proceeds. It is manifest that in the trial of such issue, it was immaterial whether it was the duty, or mere privilege of the administrator to "complete and gather" the crop. His rights and liabilities were the same under either interpretation. The provisions of the statute are as follows:

§ 2439. "The executor or administrator may complete and gather a crop commenced by the decedent.

§ 2440. "The crop made under the provisions of the preceding section is assets in the hands of the executor or administrator, the expenses of the plantation being deducted therefrom."

The only argument by which it can be shown that it is the duty of the personal representative, in all cases, to complete and gather the crop left growing, is to construe the word *may* in § 2439, as meaning *must.* We do not feel authorized to give it that interpretation. True, in public statutes the word may is deemed imperative, and the equivalent of must, where the public interests and rights are concerned, and where the public or third persons have a claim *de jure* that the power conferred should be exercised. 2 Brick. Dig. 462, §§ 29, 30. The reason on which the rule rests not existing in this case, the rule does not apply. We hold the intention of the legislature, as expressed in § 2439 of the Code, was to confer on the personal representative the option of completing and gathering the crop, and not to make it his absolute duty to do so.—*Loeb v. Richardson,* 74 Ala. 311. Of course it would be his duty to do so, when-

[Blair v. Murphree, Adm'r.]

ever, from the reasonable appearance of things, the interests of the estate are likely to be promoted thereby. Thus limited and qualified, it is the duty of the personal representative "to continue the cultivation [of the crops left growing], to gather and prepare them for market, and to make sale of them." Such was the condition in which the administrator had found the crop, in *Tayloe v. Bush*, and hence it was his duty to complete and gather it. This is intended as an explanation of the rule as declared in *Tayloe v. Bush.*

In the present case, as the record informs us, the administrator did not assert his statutory right and option to complete and gather the crop. The widow and children performed that service. The crop was, therefore, not made "under the provisions" of § 2439 of the Code, and was not made assets in the hands of the administrator by the provisions of the Code above interpreted.

In *Mitcham v. Moore*, 73 Ala. 542, 547, this court said : "A crop growing, the product of annual sowing or planting, is personal property; it falls strictly under the denomination of emblements, and as such passes to the personal representative. This remark was made in reference to a plea, which was otherwise insufficient ; but it is doubtful if the doctrine asserted is not stated too broadly to meet every case, even at the common law. A crop left growing and ungathered at the time of the owner's death, was, at common law, treated as personalty, and went to the personal representative, when the contention arose between him and the heir at law. The rule was different as between him and the devisee or the dowress.— *West v. Moore*, 8 East, 339 ; 1 Wms. Ex'rs. 713, 718 ; 2 Scrib. on Dower, 89, 778; *Dermett v. Hopkinson*, 63 Me. 350 ; *Parker v. Parker*, 17 Pick. 236 ; *Ralston v. Ralston*, 3 G. Greem, 533; *Kain v. Fisher* 2, Seld. 597; *Talbot v. Hill*, 68 Ill. 106 ; 1 Scrib. on Dower, 18 ; *Street v. Saunders*, 27 Ark. 554. A reason is attempted to be given for the distinction between claimants of the different classes, but it is not very satisfactory. Mrs. Blair asserted claim in neither right, and hence does not bring herself within the letter of the principle as stated. Neither does it appear that she claimed the cotton as part of the exemption secured to her under the statute.—Code of 1876, § 2825 ; *Mitcham v. Moore, supra.* We must, therefore, search for another principle to solve the present controversy.

Do not our statutes copied above, and other legislation, after noticed, change the common law rule in reference to the direction the crop shall take, which a decedent leaves growing at the time of his death ? Is not the necessary

effect of our statue—Code, §§ 2439, 2440—to change the common law rule, and to substitute the statutory one in all such cases? It is manifest that the statutory right of the personal representative " to complete and gather " the crop, if he choose to exercise it, will prevail over the common law right of the devisee or dowress, because the two rights can not co-exist. Is it not equally manifest that the absolute right in the personal representative given by the common law to claim the growing crop against the heir, as emblements and assets of the estate, is equally incompatible with the option the statute gives him to complete and gather the crop, and thus make it assets of the estate? How can the two rights stand together?

Section 2238 of the Code of 1876 provides that " The widow may retain possession of the dwelling house where her husband most usually resided next before his death, with offices and buildings appurtenant thereto, and the plantation connected therewith, until her dower is assigned her, free from the payment of rent." Having the right to . retain possession, it would seem she is entitled to all the benefits that right confers, except those the statute itself denies her. We have seen that under § 2439 of the Code, the personal representative does not rest under the absolute duty of completing and gathering the crop; and, the crop does not become assets of the estate unless he complies with the terms of the statute. If he fails to do so, the crop must belong to the widow, who has been thus left in undisturbed possession of the plantation. We have stated above under what conditions it becomes the duty of the personal representative to " complete and gather a crop commenced by the decedent."

The rulings of the Circuit Court are in conflict with our views.

Reversed and remanded.